ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Energy Matter Conversion Corporation ) ASBCA No. 61583
)
Under Contract No. N68936-09-C-0125 )

APPEARANCE FOR THE APPELLANT: Dr. Jaeyoung Park
  President

APPEARANCES FOR THE GOVERNMENT: Arthur M. Taylor, Esq.
  DCMA Chief Trial Attorney
  Stephen M. Wilson, Esq.
  Defense Contract Management Agency
  Carson, CA

OPINION BY ADMINISTRATIVE JUDGE SWEET ON THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

The government has moved for summary judgment. It argues that it is entitled to judgment as a matter of law on the claims of *pro se* appellant Energy Matter Conversion Corporation (EMC2) that the government improperly imposed a penalty because EMC2 included expressly unallowable legal costs in its cost proposals, and EMC2 is not entitled to a waiver of that penalty. EMC2 argues that the legal costs are not expressly unallowable, and that it is entitled to a waiver. For the reasons discussed below, the motion is granted.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. Beginning in 2006, the U.S. Department of Justice (DOJ) investigated EMC2 for potential mischarges, in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733 related to a different contract than the one subject to this appeal (app. supp. R4, tab 12). The DOJ sought $556,745.83 (app. supp. R4, tab 13 at 9).

2. On September 11, 2009, the Department of the Navy (Navy) awarded Contract No. N68936-09-C-0125 (0125 contract) to EMC2. The 0125 contract was a cost-plus-fixed-fee contract. (R4, tab 1) The 0125 contract included Federal Acquisition Regulation (FAR) clause 52.216-7, ALLOWABLE COST AND PAYMENT (DEC 2002), which incorporated FAR Part 31, Contract Cost Principles and Procedures (*id.* at 22). The 0125 contract also included FAR clause 52.242-3, PENALTIES FOR UNALLOWABLE COSTS (MAY 2001) (*id.* at 21).

3. On December 10, 2012, the Navy Acquisition Integrity Office (AIO) issued a show cause letter regarding questionable costs EMC2 charged to the Navy in fiscal year (FY) 2000 through FY 2005 related to different contracts than the one subject to this appeal (app. supp. R4, tab 1 at 1-2).[1] Among the questionable costs was the salary of Cortine McGowen. According to the show cause letter, Ms. McGowen told investigators that she worked as a housekeeper at the residence of EMC2's prior owners, instead of at EMC2's offices. (*Id.* at 4) The show cause letter expressly stated that "[t]his evidence of cost mischarging indicates a serious lack of business integrity that may warrant the debarment of EMC[2] from Government contracting pursuant to FAR 9.4" (*id.* at 2).

4. By letter dated January 7, 2013, EMC2 disputed the assertion that the costs for Ms. McGowen's salary were not allowable (app. supp. R4, tab 2 at 2).

5. In 2013, EMC2 resolved the DOJ and AIO investigations (collectively, investigations) by refunding the Navy $249,850.90. The compromise did not expressly provide that the costs incurred in connection with the investigations were allowable. (Compl. ¶ 3(c); app. supp. R4, tabs 14-15)

6. EMC2 submitted Final Indirect Cost Rate Proposals (FICRPs) for FY 2010 and 2011 related to the 0125 contract (2010/2011 FICRPs). The 2010/2011 FICRPs are not in the Rule 4 file. EMC2 alleges that the 2010/2011 FICRPs included as allowable costs legal costs EMC2 incurred in connection with the investigations (legal costs). (Compl. ¶ 1(c))

7. On June 30, 2016, EMC2 submitted FICRPs for FY 2012 and FY 2013 (2012/2013 FICRPs). The 2012/2013 FICRPs included as allowable costs over $10,000 of legal costs. (R4, tab 4 at 94, 108-09, 116)

8. The Defense Contract Audit Agency (DCAA) audited the 2010/2011 FICRPs (2010/2011 audit), allegedly between January 10, 2017 and January 24, 2017. The final audit report for the 2010/2011 audit is not in the Rule 4 file. (Compl. ¶ 1(a)-(b)) However, there is evidence that the DCAA concluded that EMC2 should be penalized for including expressly unallowable costs. Nevertheless, the contracting officer (CO) waived the penalties for including expressly unallowable costs in EMC2's 2010/2011 FICRPs pursuant to FAR 42.709-5(c). (App. supp. R4, tab 10)

9. On January 10, 2017, DCAA commenced an audit of the 2012/2013 FICRPs (2012/2013 audit) (app. supp. R4, tab 5). The 2012/2013 audit resulted in an August 17, 2017 audit report (2012/2013 audit report). The 2012/2013 audit report

_____

[1] The AIO originally sent the show cause letter on November 5, 2012, but the letter did not reach EMC2 due to a change of address. The AIO then sent the letter to the new address on December 10, 2012. (App. supp. R4, tab 1 at 1-2)

questioned the allowability of the legal costs under FAR 31.205-47(b)(4). EMC2 did not withdraw the 2012/2013 FICRPs prior to the DCAA audit. (R4, tab 4)

10. On January 9, 2018, the CO issued a final decision (COFD), assessing a penalty in the amount of $53,614, including interest, due to the inclusion of the legal costs in the 2012/2013 FICRPs. The COFD also rejected EMC2's request for a waiver of the penalty for the 2012/2013 FICRPs. (R4, tab 5)

11. This appeal followed.

DECISION

I.     The Standards for Summary Judgment

Summary judgment will be granted if a moving party has shown that there are no genuine issues of material fact, and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding summary judgment motions, we do not resolve controversies, weigh evidence, or make credibility determinations. *Liberty Lobby*, 477 U.S. at 255. Moreover, we draw all reasonable inferences in favor of the non-movant. *Id.*

II.    Penalty

The government is entitled to judgment as a matter of law on EMC2's claim that the government improperly imposed the penalty because there is no genuine issue of material fact but that the legal costs were expressly unallowable. "If the head of the agency determines that a cost submitted by a contractor in its proposal for settlement is expressly unallowable under a cost principle..., the head of the agency shall assess a penalty." 10 U.S.C. § 2324(b); *see also* FAR 42.709-3. An expressly unallowable cost is "a particular item or type of cost which, under the express provisions of an applicable law, regulation, or contract, is specifically named and stated to be unallowable." FAR 31.001. It is the government's burden to show that it was unreasonable under all of the circumstances for a person in the contractor's position to conclude that the cost was allowable. *Luna Innovations, Inc.*, ASBCA No. 60086, 18-1 BCA ¶ 36,919 at 179,871; *Gen. Dynamics Corp.*, ASBCA No. 49372, 02-2 BCA ¶ 31,888 at 157,570, *rev'd in part on other grounds*, *Rumsfield v. Gen. Dynamics Corp.*, 365 F.3d 1380 (Fed. Cir. 2004).

The express provisions of the FAR specifically state that costs incurred in connection with any proceedings—including investigations—brought by the government for a violation of the law that result in disposition by compromise are

3

unallowable if "the proceedings could have led to debarment." FAR 31.205-47(a)-(b).[2] Here, EMC2 incurred the legal costs in connection with the DOJ and AIO investigations for a violation of the law (SOF ¶¶ 1, 3, 6-7). Moreover, EMC2 disposed of the investigations by compromise when it refunded the Navy $249,850.90 in 2013 (SOF ¶ 5). Further, the investigations could have resulted in debarment, as the Navy informed EMC2 in the December 10, 2012 letter (SOF ¶ 3; FAR 9.406-2). Because there is no genuine issue of material fact suggesting that it was reasonable under all of the circumstances for a person in EMC2's position to conclude that the legal costs were allowable, there is no genuine issue of material fact but that the legal costs were expressly unallowable.

EMC2 appears to question whether the investigations would have resulted in debarment by arguing that its January 7, 2013 letter establishes that Ms. McGowen's statements were not truthful, so EMC2 would have prevailed on the merits in the proceeding brought by the government (app. resp. at 2). However, after sending the January 7, 2013 letter, EMC2 paid the Navy $249,850.90 to dispose of the investigations (SOF ¶ 5). That fact calls into question the strength of EMC2's argument that the January 7, 2013 letter establishes that it would have prevailed on the merits. In any event, under FAR 31.205-47(b), the government merely must show that the investigations "could have led to debarment"; not that it would have done so.

In sum, because there is no genuine issue of material fact but that the legal costs were expressly unallowable, the government is entitled to judgment as a matter of law on EMC2's claim that the government improperly imposed a penalty.

III.    Penalty Waiver

The government also is entitled to judgment as a matter of law on EMC2's claim that it was entitled to a penalty waiver because there is no genuine issue of material fact suggesting that EMC2 had adequate policies, training, controls, and review systems, and that it inadvertently incorporated the legal costs into the 2012/2013 FICRPs. A CO must waive a penalty when:

> The contractor demonstrates, to the cognizant contracting
> officer's satisfaction, that...[i]t has established policies and
> personnel training and an internal control and review
> system that provide assurance that unallowable costs

---

[2] EMC2 does not—and could not—argue that the exceptions in FAR 31.205-47(c)(1) for when a compromise expressly provides that legal costs are allowable, or the contractor incurred certain costs in connection with proceedings brought by a third party, or a state, local, or foreign government apply here (app. resp.; SOF ¶¶ 1, 3, 5).

4

subject to penalties are precluded from being included in the contractor's final indirect cost rate proposal...and [t]he unallowable costs subject to the penalty were inadvertently incorporated into the proposal, *i.e.*, their inclusion resulted from an unintentional error, notwithstanding the exercise of due care.

FAR 42.709-5(c).[3]

Here, EMC2 argues that the government failed to inform EMC2 that the government was disallowing the legal costs in EMC2's 2010/2011 FICRPs until after EMC2 submitted its 2012/2013 FICRPs (app. resp. at 1). However, as we have recognized:

The broad purpose of the penalty provisions...was "to ensure that contractors, rather than the Government bear the burden of assuring that contractor submissions for reimbursement of costs on government contracts do not include unallowable costs." (H.R. Conf. Rep. No. 102-966, 728, *reprinted in* 1992 U.S.C.C.A.N. 1769, 1819...)[.]

Congress was concerned with ending what Congressman Bill Nichols, Chairman of the Investigations Subcommittee, and an author of the penalty provision, referred to as a "cat-and-mouse game," namely, "a game in which the cost of an item is submitted regardless of whether it's allowable, and the burden is placed on the Government auditors to identify and disallow the item." *Review of Allowable Costs in Overhead Submission[s] of defense Contractors*: Joint Hearings before the Seapower and Strategic and Critical Materials Subcommittee and the

---

[3] EMC2 does not—and could not—argue that the other exceptions in FAR 42.709-5 for when the contractor withdraws the proposal before the government formally initiates an audit, or the amount of the unallowable costs was $10,000 or less apply here (app. resp.; SOF ¶¶ 7, 9).

Investigations Subcommittee of the House Comm. on Armed Services, 99th Cong. 52, 60 (1985)[.]

*Gen. Dynamics*, 02-2 BCA ¶ 31,888 at 157,568. Thus, EMC2 cannot avoid the penalty by placing the burden of identifying and disallowing the legal costs on the government.

EMC2 also asserts that it updated its accounting policies on January 26, 2017 (app. resp. at 2). However, EMC2 points to no evidence to support that assertion (*id.*). Even if it had, that would not be a basis for a penalty waiver. In order for the penalty waiver to apply, a contractor must have policies established at the time it submitted its erroneous FICRP. FAR 42.709-5. Thus, even if EMC2, as it has alleged, updated its policies on January 26, 2017 this was after its submission of the 2012/2013 FICRPs on June 30, 2016 and it cannot avail itself of the penalty waiver (SOF ¶ 7). Indeed, by asserting that it did not update its policies to address the error until January 26, 2017, EMC2 effectively concedes that it did not have adequate policies in place at the time it submitted the 2012/2013 FICRPs on June 30, 2016 (app. resp. at 2).

Further, EMC2 asserts that it underbilled the government (app. resp. at 2). However, EMC2 points to no evidence supporting that assertion (*id.*). Even if it had, underbiling is not an enumerated basis for a penalty waiver. FAR 42.709-5.

Next, EMC2 points to the fact that the CO waived the penalty for its inclusion of the legal costs in its 2010/2011 FICRPs (app. resp. at 2). However, a CO's decision is not binding in any subsequent proceeding. *Weststar Engineering, Inc.*, ASBCA No. 52484, 02-1 BCA ¶ 31,759 at 156,853 n.2. Therefore, the CO's decision to waive the penalty for the 2010/2011 FICRP is not binding on his decision regarding whether to waive the penalty for the 2012/2013 FICRPs.

Finally, EMC2 argues that it should only pay 55 percent of the penalty to reflect an apportionment of the legal costs attributable to its "success[]" in the investigations (i.e., the amount by which settlement reduced EMC2's potential liability) (compl. ¶ 3(d); app. resp. at 2). However, FAR 42.709-5 does not authorize such apportionment. Indeed, the United States Court of Appeals for the Federal Circuit has rejected apportionment under similar circumstances—namely in determining when legal costs are unallowable. *Gen. Dynamics*, 365 F.3d at 1385. Therefore, the government is entitled to judgment as a matter of law on EMC2's penalty waiver claim because there is no genuine issue of material fact suggesting that EMC2 had adequate policies, training, controls, and review systems, and that it inadvertently incorporated the legal costs into the 2012/2013 FICRPs.

## CONCLUSION

For the reason set forth above, the government's motion for summary judgment is granted. This appeal is denied.

Dated: December 18, 2018

                                          _James R. Sweet_____
                                          JAMES R. SWEET
                                          Administrative Judge
                                          Armed Services Board
                                          of Contract Appeals

I concur                                  I concur


_____                 _____
RICHARD SHACKLEFORD                       J. REID PROUTY
Administrative Judge                      Administrative Judge
Acting Chairman                           Vice Chairman
Armed Services Board                      Armed Services Board
of Contract Appeals                       of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61583, Appeal of Energy Matter Conversion Corporation, rendered in conformance with the Board's Charter.

Dated:


                                          _____
                                          JEFFREY D. GARDIN
                                          Recorder, Armed Services
                                          Board of Contract Appeals